**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| ROSESTONE OPERATING CO., ET AL. | CIVIL ACTION NO. 26-0291 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| THOMAS WAYNE BIRDSONG | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is the Motion to Dismiss, Record Document 10, filed by the defendant, Thomas Wayne Birdsong ("Birdsong"), based on the *Colorado River* abstention doctrine.[1] The Magistrate Judge issued a Report and Recommendation that recommended denying the motion. Record Document 17. Birdsong filed a timely objection. Record Document 18. After Birdsong's objection, the Court stayed this litigation until the Louisiana Second Circuit Court of Appeal ("Louisiana Second Circuit") reviewed a state-court eviction judgment at the center of this dispute. Record Document 21.

Since then, two things have changed. First, the United States Supreme Court held that the *Rooker-Feldman* doctrine[2] bars federal actions seeking review of state-court judgments even when "the state-court judgment at issue is subject to further review in state appellate proceedings." *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S.

---

1 The doctrine was formulated in *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

2 This doctrine comes from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

668, 668 (2026). Then, two months later, the Louisiana Second Circuit affirmed the eviction judgment that removed the plaintiffs, Rosestone Operating Company, LLC and NR Resources LLC (collectively, "Rosestone"), from Birdsong's land in Claiborne Parish. Because of these developments, the Court directed Birdsong and Rosestone to provide supplemental briefing addressing the *Rooker-Feldman* doctrine. Record Document 25.

For the following reasons, the Court **DECLINES TO ADOPT** the Report and Recommendation of the Magistrate Judge. Record Document 17. The Motion to Dismiss, Record Document 10, is **GRANTED,** and all claims Rosestone asserted against Birdsong are **DISMISSED WITHOUT PREJUDICE**, because the *Rooker-Feldman* doctrine deprives this Court of jurisdiction. The Court does not reach the issue of *Colorado River* abstention because it lacks jurisdiction to do so.

**Background**

In February 2025, Birdsong sued Rosestone and about twenty other defendants in Louisiana state court. *See generally* Record Document 10-3. Their dispute centered on land that Birdsong owned in Claiborne Parish that had been leased for oil and gas operations. *Id.* at 3. Two leases governed those operations. The first, a mineral lease, was executed in 1945 ("1945 Lease") between L.J. Birdsong and Hunt Oil Company. *See* Record Document 1-3. The second lease, called a surface use agreement, arose in 2018 ("2018 SUA") between Birdsong and Will Energy Corporation ("Will Energy"). Record Document 1-2. The 2018 SUA permitted Will Energy, or its assigns, to use Birdsong's land for operations under the 1945 Lease. *Id.* at 1. Eventually, Rosestone

obtained the rights under the 2018 SUA and operated a saltwater disposal well on Birdsong's land. Record Document 1 at 2.

Birdsong asserted three causes of action in his state-court petition. *See generally* Record Document 10-3. Birdsong first alleged that the activities of Rosestone and the other state-court defendants polluted his land by, among other things, using it for unauthorized disposal of harmful substances, abandoning equipment, and disregarding leaks. *See id.* at 3-7. Birdsong also alleged that the defendants injected produced water into the saltwater disposal well on his land without authorization. *Id.* at 7.

Relevant here, the third and final cause of action was asserted against Rosestone alone. *See* Record Document 10-3 at 8. Birdsong alleged that Rosestone breached the 2018 SUA because it failed to make the required $2,000 annual rental payment. *Id.* Birdsong further claimed that the 2018 SUA had terminated through this nonpayment and that Rosestone nevertheless continued to use the land and otherwise failed to restore the land. *Id.* A few months later, the eviction proceeding that spawned this lawsuit began, and Rosestone has twice brought this state-court eviction dispute here.

On April 29, 2025, Birdsong moved the state trial court to evict Rosestone from his land. Record Document 10-9. Birdsong based the eviction on Rosestone's failure to make its annual payment under the 2018 SUA. *Id.* at 2. The state court scheduled a hearing on the motion to evict for May 15, 2025. Record Document 10-2 at 4. The day before that hearing, though, Rosestone removed Birdsong's lawsuit to this Court.

Record Document 10-4. Rosestone acknowledged in its notice of removal that Birdsong sought "immediate eviction of Rosestone from the property described in the 2018 SUA." *Id.* at 1-2. That effort failed, though, and this Court remanded Birdsong's suit to the state trial court. *Birdsong v. B&D Operating Co.,* No. 25-661, 2025 WL 1742646 (W.D. La. June 5, 2025) (Hornsby, Mag. J.), *report and recommendation adopted by* 2025 WL 1742644 (W.D. La. June 23, 2025) (Edwards, J.).

Following remand and a second motion for eviction, the state trial court held an eviction hearing on July 23, 2025. *See* Record Document 27-1 at 1. Rosestone filed a motion to strike and argued that Louisiana's summary process for eviction was improper because the 2018 SUA was "not a lease" and thus did not provide a basis for eviction. *See* Record Document 10-11 at 1. Rosestone further argued that a summary eviction would violate the terms of the 2018 SUA because that lease "contemplates orderly wind-down procedures, including negotiation and restoration rights." *Id.* at 2. The state trial court rejected Rosestone's arguments.

On August 28, 2025, the state trial court entered judgment in Birdsong's favor and evicted Rosestone from Birdsong's land. Record Document 27-1. The judgment included four decretal paragraphs. *See generally id.* First, the state trial court denied Rosestone's motion to strike Birdsong's eviction process. *Id.* at 1. Second, the judgment stated that Rosestone and its affiliates "are hereby evicted from, are ordered to vacate, and, within twenty-four hours of the rendition of this judgment, are to deliver possession to [Birdsong] of his [land]." *Id.* Third, the judgment ordered Rosestone "to return all keys to said premises to [Birdsong] within twenty-four hours

of the rendition of this judgment." *Id.* Finally, the judgment awarded Birdsong attorneys' fees and costs related to the eviction. *Id.* at 2.

But the eviction dispute did not end with the state trial court's judgment. Rosestone challenged the eviction judgment in state and federal court. First, Rosestone filed a devolutive appeal with the Louisiana Second Circuit, and for the most part, repeated its argument that the 2018 SUA did not constitute a lease and could not be the subject of an eviction proceeding. *See generally* Record Document 27-2. Meanwhile, with its appeal still pending, Rosestone also filed this lawsuit against Birdsong in federal court. Record Document 1.

In its federal complaint, Rosestone pleaded two causes of action. Record Document 1 at 5-7. Rosestone first asserted a cause of action for breach of contract based on the 2018 SUA, or in the alternative, the 1945 Lease. *Id.* at 5. According to Rosestone, Birdsong breached the 2018 SUA because it "no provision" that allowed "Birdsong to evict [Rosestone] from the [saltwater disposal] well" for late payment. *Id.* at 3. Rosestone pleaded that "[t]he eviction obtained by Birdsong in the state court is a breach of the 2018 SUA." *Id.* at 5. Alternatively, Rosestone articulated a breach of contract under the 1945 Lease. *Id.* at 6. Rosestone stated that the 1945 Lease provided it with a right of access to a lease road and that Birdsong "is refusing access to and across the lease road." *Id.* The second cause of action in the complaint was for conversion. *Id.* Rosestone alleged that it had valuable movable property, like storage tanks, on Birdsong's land and that "Birdsong has refused Plaintiff's access to retrieve Plaintiff's property and has refused to return Plaintiff's Property." *Id.* Rosestone said

that it has "been deprived of [its] property indefinitely and *since the eviction* on July 23, 2025." *Id.* at 7 (emphasis added).

The complaint also recited Rosestone's damages and, perhaps unintentionally, emphasized that the eviction judgment caused its injuries. Rosestone alleged that "[t]he *eviction* has damaged [Rosestone] in several ways." Record Document 1 at 3 (emphasis added). For example, in Rosestone's telling, "[s]ince the *Order of Eviction*, [Rosestone] [has] incurred to date in excess of $120,000 in additional saltwater disposal costs and continues to incur approximately $15,000 in additional saltwater disposal costs monthly." *Id.* at 4 (emphasis added). Similarly, when discussing its equipment, Rosestone said that "[t]he *eviction* has also stranded valuable movable property on the [saltwater disposal] well surface facilities[.]" *Id.* (emphasis added).

Birdsong responded to Rosestone's federal complaint by filing a motion to dismiss based on the *Colorado River* abstention doctrine. Record Document 10. As mentioned, after the Magistrate Judge recommended denial of that motion, the undersigned stayed the litigation until the Louisiana Second Circuit ruled on Rosestone's appeal of the eviction judgment. Record Document 21.

On August 19, 2026, the Louisiana Second Circuit affirmed the eviction judgment. *Birdsong v. Hunt Oil Co.*, No. 56-956, 2026 WL 2416776 (La. App. 2 Cir. Aug. 19, 2026). That court held that the state trial court committed "no manifest error in its grant of eviction for nonpayment of rent." *Id.* at *3. The Louisiana Second Circuit, among other things, rejected Rosestone's arguments that the 2018 SUA did not provide a basis for summary eviction, reasoning that Birdsong "was entitled to

evict [Rosestone] as tenants or occupants, regardless of whether the SUA was characterized as a lease." *Id.*

After resolution of Rosestone's state court appeal, this Court ordered the parties to address the *Rooker-Feldman* doctrine. Record Document 25. The parties have complied, *see* Record Documents 27, 29-30, and Birdsong's objection to the Report and Recommendation is now ripe.

**Standard**

The district court must review a magistrate judge's recommendation de novo when a party has objected. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). In conducting a de novo review, the district court examines the entire record and makes its own independent assessment of the law. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983) ("[T]he statutory obligation of the district court to arrive at its own, independent conclusion about those portions of the magistrate judge's report to which objection is made is not satisfied by a mere review of the magistrate's report itself.").

**Analysis**

The *Rooker-Feldman* doctrine limits the jurisdiction of federal district courts. *See Land and Bay Gauging, L.L.C. v. Shor*, 623 F. App'x 674, 678 (5th Cir. 2015). Under this doctrine, "inferior federal courts do not have the power to modify or reverse state court judgments[.]" *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017). The doctrine has four elements: "(1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the

district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment." *Id.* But "the second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Land and Bay Gauging,* 623 F. App'x at 678.

Here, the first and third elements are not disputed. To start, Rosestone is a "state-court loser." The trial court entered judgment in Birdsong's favor and evicted Rosestone from Birdsong's land. Record Document 27-1; *see, e.g.*, *Rangel v. ASLM II*, No. 24-436, 2025 WL 2946185, at *3 (W.D. Tex. Aug. 22, 2025)("District Courts in the Fifth Circuit have overwhelmingly dismissed challenges to state court eviction judgments on *Rooker-Feldman* grounds.") (collecting cases).

Furthermore, the trial court rendered the eviction judgment before this federal case began. The Second Judicial District Court for the Parish of Claiborne, Louisiana, issued the eviction judgment on August 28, 2025. Record Document 27-1. Rosestone filed its federal complaint five months later. Record Document 1. Although the eviction judgment might be reviewed by Louisiana's highest court, that does not preclude application of the *Rooker-Feldman* doctrine. *T.M.*, 608 U.S. at 672 (holding that the doctrine "bars suit when the state-court judgment at issue is subject to further review in state appellate proceedings."). Therefore, the Court finds that Birdsong satisfied the first and third elements of the *Rooker-Feldman* doctrine.

The second and fourth elements, by contrast, are disputed. These elements, whether the federal case complains of injuries caused by the state-court judgment and seeks review of that judgment, are the "hallmark[s] of the *Rooker-Feldman*

inquiry." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Id.* at 382-83 (cleaned up). However, the doctrine occupies a "narrow ground" and "does not prohibit a plaintiff from presenting some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which the plaintiff was a party." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 384 (5th Cir. 2022) (cleaned up).

Rosestone insists that its federal case "presents [three] independent claims." Record Document 29 at 2. First, Birdsong breached the 2018 SUA when he obtained an eviction judgment and Rosestone could not wind down its operation. *Id.* at 6-7. Second, Birdsong breached the 1945 Lease because it could not access a lease road on Birdsong's land. *Id.* at 5. Finally, Birdsong converted Rosestone's equipment because Rosestone could not retrieve that equipment after the eviction judgment. *Id.* at 5-6. According to Rosestone, these claims are independent of the eviction judgment because its complaint sought damages only and sought neither declaratory judgment of its contractual rights nor reversal of the state court's judgment. *See, e.g.*, Record Document 19 at 8 ("Plaintiffs seek neither declaratory judgment nor any equitable relief—only damages."); *accord Avdeef v. Royal Bank of Scot., P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) ("If the plaintiff claims damages for injuries caused by the defendants' actions—even those occurring during litigation—rather than injuries

arising from a state-court judgment itself, the federal suit is not barred by *Rooker-Feldman*.").

Even though Rosestone labeled its claims as independent, each complains of an injury that the eviction judgment caused and seeks review of the judgment. The United States Court of Appeals for the Fifth Circuit looks at two "guideposts" to determine whether a claim is independent. *See Land & Bay Gauging*, 623 F. App'x at 679. The first is timing. *Id.* If an injury occurred only after the state court judgment, "the timing indicates that the judgment itself was the source of these injuries." *Id.* The second is authority. *Id.* If the defendant caused the harm while "acting under authority granted by the state court[,]" the judgment itself caused that harm. *See id.*

Measured against these guideposts, Rosestone's three claims seek damages for an injury that arose from the eviction judgment itself. The timing of the injury shows as much. Rosestone lost access to Birdsong's land, and to the equipment it left there, only after the state trial court ordered it off the land. *See* Record Document 1 at 4 (alleging damages "[s]ince the order of eviction"). Birdson acted under the authority of the state court judgment. The eviction judgment ordered Rosestone to "vacate" Birdsong's land and "deliver possession" of it within twenty-four hours. Record Document 27-1 at 1. When Birdsong later kept Rosestone off his land, he was carrying out that judgment.

## I. Breach of the 2018 SUA

In its federal complaint, Rosestone alleged that "[s]eeking the eviction and obtaining the judgment constitute breaches of the 2018 SUA in that plaintiffs have been denied their right to possess the property during the full term of the 2018 SUA" and that "[t]he eviction obtained by Birdsong in the state court is a breach of the 2018 SUA." Record Document 1 at 3, 5. As for its damages, Rosestone pleaded that it had incurred an additional $120,000 in saltwater disposal costs "[s]ince the Order of Eviction." *Id.* at 4.

This theory, breach of the 2018 SUA, is a direct attack on the state court judgment. By Rosestone's own account, the eviction judgment itself was the injury because it constituted a breach of contract. Record Document 1 at 5 ("The eviction…is a breach of the 2018 SUA."). As Rosestone admitted, the damages for this breach, additional costs of saltwater disposal, only began "[s]ince the Order of Eviction." *Id.* at 4. Furthermore, in its response to Birdsong's arguments, Rosestone acknowledged that to find a breach of the 2018 SUA based on the eviction would require "ultimate reversal" of the state court, albeit "only in part." Record Document 29 at 7. Reversal in part is still reversal, and this Court has no more power to reverse part of a state court's judgment than it does to reverse the entirety of a state court's judgment. *See Burciaga v. Deutsche Bank National Trust Co.*, 871 F.3d 380, 384 (5th Cir. 2017).

Rosestone, as it must, frames its claims as challenges to Birdsong's conduct "before and after the eviction," not to the judgment itself. Record Document 29 at 6. Before the eviction, according to Rosestone, Birdsong acted wrongfully in "seeking

eviction without authority under the 2018 Surface Use Agreement and for the purpose of impairing the operations of Rosestone and acquiring its facilities and equipment without lawful cause…." *Id.*

For support, Rosestone relies on *Land and Bay Gauging, L.L.C. v. Shor*, 623 F. App'x 674 (5th Cir. 2015), a Fifth Circuit decision that hurts Rosestone more than its helps. *Land and Bay Gauging, L.L.C.* involved allegations that a "corrupt conspiracy" existed between a state court judge and the defendant and allowed the defendant to obtain turnover orders. 623 F. App'x at 677. The Fifth Circuit found that the plaintiff's "abuse-of-process claims are independent of the state-court judgment [because] the damages [plaintiff] requested were for injuries caused by the [defendant] entities' allegedly fraudulent and conspiratorial actions, not injuries arising from the turnover order itself." *Id.* at 680.

The Fifth Circuit reached the same result in *Truong v. Bank of America, N.A.*, 717 F.3d 377 (5th Cir. 2013). There, the plaintiff alleged that the defendants had obtained a foreclosure judgment through deceptive practices, pleading that the defendants had "(1) misled the state court into thinking that the executory process evidence was authentic when, in fact, it was not; and (2) misled [plaintiff] into foregoing her opportunity to dispute authenticity in the state-court proceedings." *Id.* at 383. These allegations constituted independent claims because "the damages [plaintiff] requested were for injuries caused by the [defendant]s' actions, not injuries arising from the foreclosure judgment." *Id.*

In contrast, Rosestone alleged nothing of the sort. Rosestone does not allege that an unlawful conspiracy existed between Birdsong and the state court. *Cf. Land & Bay Gauging,* 623 F. App'x at 680. Nor does Rosestone claim that Birdsong misled it into foregoing some other right. *Cf. Truong*, 717 F.3d at 383. Rosestone alleged, instead, that Birdsong had no legal basis to seek the eviction at all. *See, e.g.*, Record Document 1 at 3 ("There is also no provision in the 2018 SUA for eviction due to late payment of the annual contract payment."). In other words, Rosestone faults Birdsong for asserting a cause of action that, in its view, the law did not support.

But the Fifth Circuit has addressed and rejected this kind of claim. A claim "complaining about no more than a creditor's good faith (but novel) legal argument—successfully obtaining a state-court judgment that is ultimately overturned on appeal—in the absence of any allegations of fraud or other misconduct may not necessarily avoid a *Rooker-Feldman* bar." *Land and Bay Gauging, L.L.C.*, 623 F. App'x at 680 n.3. Rosestone's claim fits this description, except that the judgment here was affirmed, not overturned. Rosestone does not allege fraud, only that Birdsong's original legal theory was wrong. Because "the gravamen of the claim is the judgment itself, not the conduct of the defendants," *id.* at 680, this Court cannot declare that obtaining the eviction breached the 2018 SUA without, in effect, reversing the state court's judgment.

Rosestone's other theory, which concerned Birdsong's conduct after the judgment, fares no better. Birdsong, according to Rosestone, "refused to honor" a provision of the 2018 SUA that provided for a ninety-day period to wind down its

operations. Record Document 29 at 6. But the Court is not persuaded. Although Rosestone might not have received ninety days to wind down its operations, that injury resulted from the eviction judgment. The eviction judgment ordered Rosestone to "vacate" and "deliver possession" and "return all keys" to Birdsong's land within "twenty-four hours" of the judgment. Record Document 27-1 at 1. Even though Birdsong did not allow Rosestone back onto his land, he did so under the authority of the eviction judgment, which reduced the time Rosestone had to wind down its operations. *See*, *e.g.*, *Barrera v. Cherer*, No. 18-1149, 2019 WL 1857096, at *3 (W.D. Tex. Apr. 25, 2019) (applying *Rooker-Feldman* to claims against a constable who enforced a state eviction judgment because he "was acting pursuant to, and within the authority of, a state court order when he entered onto Plaintiff's property.").

**II. Breach of the 1945 Lease**

Rosestone alleged in the federal complaint that the 1945 Lease gives it a right of access to Birdsong's land and that Birdsong breached this contract because, among other things, he "is refusing access to and across the lease road[.]" Record Document 1 at 5, 6. Rosestone argues that this is an independent claim because "[t]he eviction judgment does not address in any way what rights…Rosestone may have under the 1945 Mineral Lease, or what damages may accrue from a breach or denial of those rights." Record Document 29 at 4.

Rosestone is correct that the eviction judgment does not mention the 1945 Lease, declare that lease terminated, or otherwise address who may hold what rights under it. *See* Record Document 27-1. But *Rooker-Feldman* does not turn on whether

the state court addressed every claim, however labeled, that the plaintiff later asserts. A plaintiff "cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief." *Raggio v. Hattaway*, No. 20-50693, 2022 WL 3572694, at *6 n.25 (5th Cir. Aug. 19, 2022). The question, instead, is what caused the plaintiff's injury. *See Truong*, 717 F.3d at 382 ("The second hallmark of the *Rooker-Feldman* inquiry is the source of the federal plaintiff's alleged injury.").

Here, the eviction judgment caused Rosestone's injury. Rosestone complains that Birdsong "has barred the Rosestone Plaintiffs from any use of the Birdsong property," including access to "lease roads and equipment" by "locking his gates and preventing access." Record Document 29 at 4-5. Rosestone lost access to the lease road and equipment because of the eviction judgment. This injury did not arise until after the eviction judgment, which ordered Rosestone to "vacate" Birdsong's land and to "deliver possession" of it to Birdsong within twenty-four hours. Record Document 27-1 at 1. Even though Birdsong locked the gates to his lease road, he did nothing more than what the eviction judgment had intended: he maintained possession of his land after the state court ordered Rosestone to leave. *See, e.g.*, *Land & Bay Gauging*, 623 F. App'x at 679 ("[T]he [defendants] were acting under authority granted by the state court in seizing the assets from [plaintiff's] businesses.").

The closest analogue to Rosestone's argument is *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374 (5th Cir. 2022). There, the Fifth Circuit held that the federal plaintiff's claims were independent because "the litigation in

federal court has been centered on the Bill of Sale, which neither party argues was interpreted by the state courts." *Id.* at 385. The state courts had addressed only a different contract, a license agreement, which they declared terminated, "restoring all rights to the license[d] marks" to the licensor. *Id.* at 378. The two contracts addressed different rights. The Bill of Sale sold the trademarks "within or upon the Carrollton Avenue location," while the License Agreement licensed "all Camellia Grill marks on file with the United States Patent and Trademark Office[.]" *See id.* at 378, 381 (cleaned up). For that reason, the federal litigation "did not directly attack the state court judgments." *Id.* at 385.

But *Uptown Grill* does not help Rosestone. Unlike the federal plaintiff in that case, who sought a declaration of "the parties' respective rights to the ownership and use of the trademarks" under the Bill of Sale, Rosestone does not ask this Court to declare what rights, if any, it holds under the 1945 Lease. 46 F.4th at 379; Record Document 19 at 8 ("Plaintiffs seek neither declaratory judgment nor any equitable relief[.]"). In *Uptown Grill*, the federal court could decide who owned the trademarks at the Carrollton Avenue restaurant under the Bill of Sale while leaving the state court's termination of the License Agreement untouched. 46 F.4th at 379, 385.

Here, the eviction judgment stands in the way. Rosestone seeks damages for being kept off Birdsong's land, and the state court ordered it off that land. Record Document 27-1 at 1. So, unlike the claim in *Uptown Grill*, Rosestone's claim cannot succeed without undoing what the state court ordered. This Court would have to hold that, despite a judgment ordering it to vacate and deliver possession, Rosestone

remained free to come and go on Birdsong's land. *Rooker-Feldman* forbids that kind of review. Rosestone cannot recover damages in federal court for being kept off land that a state court ordered it to leave.

## III. Conversion

Rosestone's final claim in its federal complaint is for conversion. Record Document 1 at 6. Rosestone alleged that it had "valuable movable property" on Birdsong's land and that Birdsong "refused [Rosestone's] access to retrieve [its] property and has refused to return [its] property." *Id.* Rosestone said that it has "been deprived of [its]…since the eviction on July 23, 2025." *Id.* at 7.

Once again, though, this conversion theory complains about an injury caused by the eviction judgment. In *Land & Bay Gauging*, the Fifth Circuit applied *Rooker-Feldman* to a conversion claim arising from a state-court turnover order. 623 F. App'x at 679. The Court barred the claim because "[t]he timing of the injury was when the Appellees took possession of property belonging to Black after obtaining the court orders. Thus, the timing indicates that the judgment itself was the source of these injuries." *Id.* Likewise, the Fifth Circuit explained that "the Appellees were acting under authority granted by the state court in seizing the assets from Black's businesses." *Id.*

Here too, the timing and authority of Rosestone's injuries show that the eviction caused them. As Rosestone admits, "[t]he eviction has also stranded valuable movable property on the [saltwater disposal] well." Record Document 1 at 4. Rosestone also states that its injury began "since the eviction on July 23, 2025." *Id.*

at 7. Although Birdsong refused Rosestone access to his land, the eviction judgment authorized his actions because it directed Rosestone to vacate the land and return its possession. Record Document 27-1 at 1.

As with its other theories, Rosestone frames this as a claim against "Birdsong's conduct after entry of the State Court eviction judgment." Record Document 29 at 5. Rosestone argues that "Birdsong *thereafter* actively barred Rosestone from collecting any equipment and other assets on the Birdsong Property that could not be removed within twenty-four hours, even where recovering certain property requires special handling and coordination with public utilities and contractors." *Id.* (emphasis added).

But this argument reinforces, rather than undermines, that the judgment caused Rosestone's injury. Birdsong did not set the twenty-four-hour deadline; the eviction judgment did. Record Document 27-1 at 1 ("[W]ithin twenty-four hours of the rendition of this Judgment…."). That Rosestone needed more than twenty-four hours to remove its equipment is a complaint about the terms of the state court's judgment, and such disputes belong in the state courts. *See, e.g.*, *Barron v. Frontier Long Term Invs. LLC*, No. 26-1621, 2026 WL 1690094, at *3 (N.D. Tex. May 22, 2026) ("Enforcement of a state court's orders lies with the state court, and issues with its enforcement are matters that should be appealed through the state courts[.]").

The Fifth Circuit addressed a similar scenario in an unpublished decision, *Raggio – 2204 Jesse Owens, L.L.C. v. Hattaway*, No. 20-50693, 2022 WL 3572694 (5th Cir. Aug. 19, 2022). There, a state court ordered a litigant to remove her personal

belongings from her property before it was sold to satisfy a judgment. *Id.* at *1. She did not, and the property was sold with her belongings still inside. *Id.* The state court later directed the constable to return to her the personal property in their possession, but it denied all other relief. *Id.* at *1, *5. It never ordered the buyers to compensate her for the belongings left in the home. *Id.* at *6. She then sued the buyers in federal court for conversion. *Id.* at *2.

In *Raggio*, the Fifth Circuit held that *Rooker-Feldman* barred the claim because, "[v]ia her conversion and unjust enrichment claims, Hammer is collaterally attacking the state district court's…order, thus indirectly alleging harm from it." *Id.* at *6. The court further explained that "[i]f Hammer disagreed with the state district court's disposition of the personal property, she should have appealed from the…order or filed for other relief in state court, rather than now attacking the judgment in federal court." *Id.* The same applies here. Like the litigant in *Raggio*, Rosestone was ordered off the land and left its "valuable movable property" behind. As in *Raggio*, a damages award against Birdsong would effectively give Rosestone what the state court did not, either more time to retrieve its property or payment in lieu of it.

In the end, all three of Rosestone's theories lead to the same place. Each complains of the same injury, the loss of Birdsong's land and the equipment on it, and each injury traces back to the eviction judgment. To award the damages Rosestone seeks, this Court would have to reverse or modify the state court's eviction judgment.

*Rooker-Feldman* forbids that review. Because Rosestone's claims satisfy all four elements of the doctrine, this Court lacks subject matter jurisdiction over them.

## Conclusion

For the foregoing reasons, the Court **DECLINES TO ADOPT** the Report and Recommendation. Record Document 17. The Motion to Dismiss, Record Document 10, filed by the defendant, Thomas Birdsong, is **GRANTED**. All claims of Rosestone asserted in the complaint, Record Document 1, against Birdsong are **DISMISSED WITHOUT PREJUDICE.** A judgment consistent with the terms of this Memorandum Ruling shall issue herewith**.**

**DONE AND SIGNED** at Shreveport, Louisiana, this 13th day of November, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE